Good morning. May it please the Court, my name is Tom Warboys, and I represent the five appellants in this matter. And with the Court's permission, I'd like to reserve two minutes for rebuttal. So, as I see my appeal, it breaks down really into three boxes. One concerns the estoppel issue and whether or not it could have been determined that Mr. Lamond relied unreasonably, as a matter of law, on his belief that he was not being defended under reservation of rights, as Sir Murphy's claims. The second is the applicability of a number of coverage exclusions, and the third is whether American Guarantee demonstrated it was entitled to judgment as a matter of law on the 93 counterclaims. With the Court's permission, I'd like to start, actually, with the estoppel argument, because I believe that, generally speaking, issues of estoppel and whether or not a party relied reasonably are generally fact issues that are better preserved for the trier fact. Based on the case law that I found, the only time that I could find that reasonableness could be determined to be unreasonable as a matter of law is where there's an explicit contradiction, and that's where you get to the Triferro case, and we've got that wonderful line. So that's not a statement of black letter law. That may be a correct statement of what happened in that case. The real question here is whether a reasonable fact finder can look at the evidence in this record and whether that fact finder, taking that look, would be compelled to reach the conclusion that the reliance was unreasonable. That's the issue. Judge Stearns answered that question by saying, yes, a reasonable fact finder would be compelled to reach that conclusion. Correct, and you can enter judgment as a matter of law as to the reasonableness of a person's belief only when the facts compel one conclusion. However, my position is that Murphy's cross-claim was separate and distinct from Hill's direct claim. Well, that's technically true, but both claims were in the same litigation, and both claims focused on precisely the same conduct on the part of the defendant. Right, but when an insurer makes a determination as to whether or not it's going to defend a claim at all, whether it's going to defend under reservation of rights, it looks at the allegations of the complaint. The allegations that Hill made were very, very different from the allegations that Murphy made in his cross-claim. In the direct claim, Hill alleged fraud, unjust enrichment, deceit, those sorts of things, whereas Murphy's cross-claim was much more benign. It alleged negligence, and it did allege a violation of Chapter 93, as this Court has recognized. A violation of Chapter 93 doesn't necessarily need to be based on fraud. So as I see it, that a fact finder could conclude that Mr. Lamond could have concluded saying, okay, based on these allegations of fraud, deceit, unjust enrichment, based on the intentional acts exclusion, American guarantee is reserving its rights based on that exclusion. But then when the cross-claim came after the reservation of rights letter, then there was simply silence. And I would submit that that is not unreasonable as a matter of law for him to look at what Murphy was alleging against him as opposed to what Hill was alleging against him, and for him to simply conclude that further inquiry was required, because there wasn't an explicit conflict, unlike the other cases that have been presented before the District of Massachusetts and the Circuit, where a party wants to rely on an oral statement that is then contradicted in writing, or vice versa. Here it was judged that a fact finder could very well conclude that Lamond was acting reasonably in his belief that under his legal malpractice policy, that the claim from his own client was not being defended under reservation of rights, whereas a claim by a stranger, Hill, was being defended under reservation of rights. But that statement is premised on whether he even had that belief, right? He said he was acting on his reasonable belief. He asked the question of Berman, didn't he? He asked the question of Berman at the very end of the trial. He asked Berman, he said, is there coverage for these claims? To which Berman responded, I don't know. He said he didn't know. So the issue is an insurer basically has one of two options when it gets a claim. If it insists on controlling the defense, then it can't reserve its rights. Otherwise, it has to at least give its insured notice that it's defending under reservation of rights so the insured has the opportunity to seek independent counsel. And the insured always has that opportunity. An insurance company can defend with no question of a reservation, and the insured, to protect what the insured visualizes as his own interests, his reputation, or his financial exposure above the policy limits, or whatever, can always bring in his own counsel. Correct Your Honor, it's when there's a perceived conflict between the insurer's assigned counsel and the insured's interests. No, it's not limited that way at all. You cannot name a case where an insured is not entitled to bring in his own counsel as co-counsel with the insurance company's counsel. There's nothing in any insurance policy that I've ever seen, and I've seen quite a few, that restricts that right. That's absolutely correct, Your Honor, but it wouldn't be at the insurance company's expense. No. In a case like that, they'd be responsible for paying their own separate independent counsel. That's right. And part of the purpose of a lawyer... And Roman had the reservation of rights with respect to the main action here. Did he bring in independent counsel? He did not, Your Honor. However, I would submit that Mr. Roman didn't act unreasonably in not doing so under the Hill claim, because Hill's claim was completely uneritorious. It was disposed of at summary judgment stage on the grounds that he had no duty of care, that he was under no duty to disclose. The Cross claim is very different in that this was his own client with whom he had a fiduciary relationship, with whom he had an attorney-client relationship. It was at that point that it would have been, you know, fairness to him to know whether or not that claim was being defended under reservation of rights. Sure. Should have asked. Well, and I think that's a question for a trier fact, because what happens is for a claim to be unreasonable, for a reliance on the unreasonable as a matter of law, there has to be some sort of explicit conflict. And here it's not that we have one. Okay. So here's the rule you want us to write. Client is sued for certain conduct. Insurance company tells him it's not sure whether it really covers that conduct.  A third-party complaint is filed in the same proceeding for exactly the same conduct, albeit on different theories of liability. And you say that the insured is entitled to a second notice of reservation, or else the insurance company is stuck, regardless of the terms of its policy. That's basically the rule. I don't know of any case law that supports that. Well, you know, it did take some doing, but I did find a case in Illinois which did stand for that proposition. But I would say that because they're relying upon an intentional acts exclusion, that basically the motive, you know, the basis behind the theory under which, you know, Mr. Lamont engaged in a certain misconduct is important to whether or not the exclusion would apply. You know, in this case, I think it stands at stark odds with the claims of negligence in Chapter 93A that Murphy brought by way of cross-claim. And as such, I think the district court just pulled the trigger a little too soon in saying that as a matter of law, it was unreasonable. Because it's unlike all the other cases that we've had here, I just don't see how there was an explicit, you know, explicit contradiction. I thought the district court handled the negligence claim differently. I thought the district court said that with respect to the negligence claim, that we simply don't have to be concerned about that because all that the jury gave the plaintiff in that case was a refund of the amount of the legal fee paid. And the policy clearly doesn't cover that. And the client was clearly entitled to it. That's right, Your Honor. This is where the argument shifts a little bit towards terms of coverage. If American Guarantee is stopped from denying coverage, then basically, you know, whether or not certain policy exclusions are applicable or not simply don't matter. They're stopped from denying them. With regard to the $20,000, the basis for the district court's determination that that was intended as a refund of attorney's fees was based on a judicial estoppel because Murphy, his attorney, Attorney Colucci, during his closing stated that, you know, that he paid, you know, Luan was paid $20,000 for his work. And then in a post-trial motion, Luan, who was represented by Attorney Berman, said that the $20,000 was intended as reimbursement. And I don't want to split hairs too much here, but as I understand judicial estoppel, what happens is you have to have a party who raises an argument previously and who's successful in the argument. Here, it was Murphy who was successful in the argument, but, you know, the argument was raised during closing, which wasn't evidence. It wasn't something for the jury to consider. It was simply, you know, something that was beyond their consideration. But more importantly, it's Lamond in this case who's seeking to, you know, make the determination that, you know, that the court simply couldn't forecast that that was intended as a refund of attorney's fees and judicial estoppel wouldn't apply to him because he wasn't successful with regard to that argument. As a matter of fact, on the post-trial motion, he lost. Is there any basis for concluding that the $20,000 was anything other than a refund of attorney's fees? The amount coincided exactly. It did, but... There was no other evidence of negligence damages, was there? Well, it's, you know, I can't get inside the jury's head. I don't know exactly why... I'm asking you about evidence in the case. The only item of damages that would be recoverable under a negligence count, as I understand it, was the bill that Lamond had rendered and that his client had paid, Murphy had paid. Well, you're correct. It does line up, but the jury didn't necessarily have to rule that way. Well, they could have found that there were no damages, but they couldn't have awarded damages for which there was no evidence. That's correct, Your Honor. But the issue is that because the insurer is the one that bears the burden of establishing that the exclusion applies, I just don't see how America Guaranteed can satisfy that burden without knowing what the jury was thinking. And because they can't provide judicial assable just because that particular principle just doesn't apply to Lamond. On the 93A claim... Yes. Is there an overlap between the exclusion's maliciousness exclusion? In other words, as I understand it, the policy excludes coverage for a malicious act or omission and a 93A violation. Are all 93A violations either malicious or dishonest? No, Your Honor. That's something I really should have brought up in my brief. Could you give me an example of why the two don't line up? Sure. Because the case law to which America Guaranteed cites in support of its, you know, premise that willful conduct equals malicious conduct is a case called Chevron. And I looked it up, and that's a case that involves the tort of malicious prosecution. But we've got this whole body of case law about what's willful conduct in the chapter 93A, and we equate it to recklessness. And recklessness simply isn't part of, isn't one of the acts that's excluded in the policy. It's not included within malicious. That's correct. What happens is that if you look at the Cattara versus DeMoula's case, St. Paul Surplus lines, there's a whole body of them which basically say that within the context of Chapter 93A, willful conduct is the equivalent of reckless conduct. And that's simply something that doesn't fall within the intention. I'm asking the other side of the equation. Does malicious include reckless conduct? No, I don't believe so, Your Honor. And what's your authority for that? Well, because I believe somebody can act recklessly without acting maliciously. You know, reckless conduct, as I recall, is defined as conduct. I wish I could remember the case right now, but I remember there are exactly two elements to it. But it doesn't actually require any sort of, as I understand, some sort of legal contemplation or intent to encompass some unlawful end. It's simply strong disregard for a known risk with a near certainty that a certain outcome will result. So based on that, I would say that the two do not line up. And I say I'm way over my limit at this point, so thank you for your time. Good morning, Your Honor. This may please the Court. Brian McDonough for the Appellee American Counsel. Mr. McDonough, can you start with the last question that Judge Cayotto asked your brother? Is there any necessary coincidence between malicious conduct and the conduct that the level of conduct that's required to be actionable Under 93A, for a finding of a willful violation of the statute, that determination means that the defendant acted with knowledge that what he was doing was unfair and unlawful, but not necessarily with the knowledge that it would result in harm. Is it unfair and unlawful? To be willfully done, you have to do something that is unfair or unlawful, and you have to realize that what you are about to do is unfair and unlawful. You may not know or expect that harm will actually result, but you have to know that what you were doing was wrong. What you did was wrong and you knew it was wrong, and that is the same standard as malice under the law in Massachusetts. You're doing something unlawful and you know it's unlawful. You don't necessarily know that somebody's going to get harmed by it, but that's malicious conduct. And so a finding of a willful violation of 93A does equal malicious conduct, and so it is subject to the policy exclusion for intentional or malicious acts. In that particular exclusion applies any and all of the liability that entered against Lamond in the underlying action. Beyond that particular exclusion, much of the other Chapter 93A liabilities are also excluded by the policy's definition of covered damages, and I would just note that the definition of covered damages is part of the insuring agreement. And so that's something, in proving up that the loss falls within the insuring agreement, that's actually the burden of Lamond. It's not the burden of the insurer. So I think my brother misspoke there when he said that it was incumbent upon the insurer to establish that, for instance, the negligence damages qualified as covered damages. No, they needed to satisfy the burden of showing that the $20,000 wasn't covered damages. But getting back to the 93A liabilities, the definition of damages also expressly excludes multiple damages. So to the extent that the 93A liabilities included the doubling of damages, that would be the doubling of the base 93A damages plus the doubling of the $20,000 in negligence, that's out. And then in addition, there was the award of attorney's fees, and the policy's definition of damages also excludes civil sanctions or civil penalties. And because the award of attorney's fees is an exception to the American rule, and it is an exception that is intended to punish and deter, it in fact qualifies as a civil sanction or penalty. And so again, that aspect of the Chapter 93A liabilities also excluded from the policy. So that's the 93A liabilities. Then you get to the negligence liability. And again, the district court correctly determined that in the underlying action, Murphy expressly asserted that the $20,000 was the amount that he paid Lamond as the fee for his services, and Lamond ratified that position in his post-trial motions. And so they were in agreement that the $20,000 in fact represented the amount that Murphy paid to Lamond as his fee, and that is again another exception to the definition of covered damages. So it's pretty clear that the policy doesn't cover the liabilities that resulted in the underlying action. And so then that puts the defendants in the position of having to argue that we shouldn't be able to invoke those terms. And as grounds for that position, they claim misrepresentation and they claim estoppel. To prevail on either of those theories, they have to show reasonable reliance on a false representation. Now there was no explicit false representation by American Guarantee that it would cover liability resulting from Lamond's failure to disclose his knowledge of this burial ground. And so that puts the defendants in the position of saying, well, you impliedly represented that you were going to do so. But that kind of implied representation is directly contradicted by the reservation of rights letter that was sent. Let me ask you about that because that puzzles you. Pretty much every lawyer knows that an insurance company is on the hook for a claim, even if it's excluded under the policy, if it defends it without a reservation of rights letter. Insurers know they need to send reservation of rights letters and routinely do. Here, and I think we can assume your client before it says it may not cover something, that it actually looks at the claim and considers it and compares it to the policy. It just doesn't arbitrarily throw off these things. So here the chronology is you have a non-client sue Lamond and his client. Your client looks at that complaint and writes a reservation of rights letters. Time goes by. The client then files a claim against Lamond. There's no indication that you ever sent any reservation of rights letter regarding those claims. You want us to presume as a matter of law that Lamond assumed that the reservation of rights letters you sent regarding the claims of the non-client would be asserted exactly the same somehow to the claims that it had never considered. Isn't it plausible that he might well not have thought that? Well, it's plausible that he could have thought that. Well, if it's plausible that he could have thought that, isn't that the basis for reasonable reliance on that failure to send? No, because there is this reservation of rights letter out there that expressly says your policy has an exclusion and a definition of damages that preclude certain types of liability. And we're asserting, we're reserving the right to assert those terms based upon the assertion of liability resulting from your failure to disclose the existence of the burial ground. And that is connection with the claim of X against you. And now he's got a claim by Y against him. I understand that. Why isn't it equally reasonable for Lamond to draw the opposite inference? Well, they sent me a reservation of rights letter with respect to the primary claim. If they wanted to reserve their rights with respect to the cross-claim or the third-party complaint, whichever it is, they'd send the reservation of rights, too. I'm glad they didn't. That means they're going to cover them. I don't think that you have, that you can engage in that kind of assumption when you've been told your policy has these terms and it will exclude coverage if, in fact, you fail to disclose your knowledge of this burial ground. You've been told that there are terms in the policy that would exclude coverage under those circumstances. And now you've got a new claim. But that claim is saying exactly the same thing. Let's look at the language of the letter that your client wrote. It says, we've reviewed the provisions of the policy in light of the allegations set forth in the complaint filed by the non-client. This letter summarizes their current analysis. Because of the very preliminary nature of the litigation, this analysis is by necessity preliminary and is subject to modification as additional facts are discovered. Time goes by. Then the client sues the lawyer with a not-identical complaint. It's a different complaint. And it's new facts that have come in. And he never gets any reservation rights letter concerning those claims. It really is not a new complaint. It mirrors, in all respects, the original complaint. The original complaint says, in which Hill says to Murphy, you didn't disclose the existence of this burial ground. And then Murphy turns to Lamond and says, if I am liable because of that, it's because you didn't disclose the existence of the burial ground. You're talking about excluding 93A claims. You're talking about willful conduct. You're talking about having to find malice. These are the sort of exclusions we're talking about. So you've got a claim by a non-client for whom there could be the entirely plausible motive that he misled the non-client because he's trying to help his client close the deal. On the claim by the client, though, against him, that could not conceivably be a motive. The motive would much more likely be some different type of motive. So they're not identical claims. They're very different. Not identical, but you've still been put thoroughly on notice that to the extent that you ensured are liable based upon your failure to disclose information that you knew of, there are these terms that would preclude coverage. And so once you're armed with that information, it's just not reasonable for any person, never mind an attorney, to say, well, they must be impliably representing that they are covering this. You have a duty of inquiry. You absolutely have a duty of inquiry. Let me ask you a question. Why on the last day of trial did he ask Berman whether the claims by the client were covered? I don't know why he asked. My position is that as a matter of law, that was a stupid, unreasonable question because he should have known the answer. I think that's right. I think that's right. Berman's answer must have been either stupid or deceptive when Berman said, I don't know, because it should have been equally obvious to Berman, who's your attorney. He's the attorney that we assigned to defend the case. But if he engaged in any breach of his duties, that's on him. It's not on the insurance company. In fact, the law is clear that we wouldn't be liable for any breaches. It's not a question of breach of duty, but the question, if it should have been so obvious to Lamont, it must have been so obvious to Berman. Well, except for the fact that the Reservation of Rights letters expressly directed that Berman is not to get involved in coverage issues and is not to advise on coverage positions. But he did. I'm not sure that Berman would have even been versed on the arguments when his client turns to him in the middle of the trial and says, is there coverage for this? He wasn't there as coverage counsel. He was there as defense counsel, and he was specifically not to opine on coverage matters. But he didn't say, I can't answer your question, I can't opine on it. He expressed, presumably, truthfully, that he didn't know the answer. And that goes to Judge Sellier's point that now you've got the client who's a lawyer, his lawyer who was hand-picked by your client, and the two of them don't seem to be sure whether there was coverage, and yet you want us to say that there's an evidence. I think we're getting into Berman's mind a little bit there as to what he knew or didn't know when he answered that question. I mean, it presumes, for one thing, that he actually carefully read the coverage position and was taking stock of what's covered and what isn't covered. We don't know that at all. We don't. We don't, but what we do know... Isn't that another reason to go to the jury here? Say that again? Isn't that another reason? No, no, because it's still... What it doesn't get to is the question of whether Lamont's conduct was reasonable. And Lamont had the letter, and he read the letter, and he knew that there were reservations asserted. And he knew that those reservations were asserted with regard to the failure to disclose the existence... his own knowledge of the existence of this burial ground. That reminds me, I want to ask you a question about that. Sure. Is it your position, then, that in the world of professional liability insurance, it is unreasonable for a covered professional to think that there would be... there might be a business reason why his insurer would cover him for client complaints, even though the same exclusion or non-coverage might apply, as in the case of a third party? Is it unreasonable to assume that there might be a business reason to not do a reservation of rights where it's the client making the complaint? Assuming without inquiry, I think, is unreasonable, particularly when you've been told that your policy has these specific provisions that would apply to preclude the very conduct that you're assuming In the face of not getting the letter, which would be pretty easy to send. The ease of sending the letter doesn't answer the question of whether it's reasonable for somebody with a letter in their hand that actually says these are the terms contained in your policy. They preclude coverage. Thank you. Any other questions? No. Thank you. Thank you. I appreciate your bubble time, even though I ran way over in my primary again. It's all right. I need to ask you a question anyway. Oh, absolutely. Just so you asked earlier whether you were advocating for a rule that says if there's no reservation of rights letter, that's the end of the inquiry. And you said yes, and you found some case in Illinois that says that. There's a case in Illinois that suggests that if a complaint is filed, and then what happens is, I believe what the case says, and then it's amended, that a second reservation of rights letter may be warranted. I think the better way for me to explain it is that if there is one set of facts, if there's one claim that is subject to reservation of rights, whether or not a second reservation of rights letter is warranted, is dependent upon the nature of that second claim. Okay. So the question that I want to ask is why do you only argue reliance? If you want a rule that says in these circumstances there need to be a letter, why do you add the additional element of reliance? And you've only argued reliance. Well, because I think basically we can use this estoppel claim either as a sword or a shield. Either as a sword, as a negligent misrepresentation claim, or estoppel as a defense. In fairness to American Guarantee, I do believe that reliance is an element of estoppel, even if you're using that as a defense to the claim. But it is true that an insurer does have to pick one position or the other, that it must either decide that it's going to just cover the claim and insist on controlling the defense or, on the contrary, reserve its rights. Did you have another point that you needed to make? No. I think that was all I had. Thank you very much. Thank you.